UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-14008-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA,

        Plaintiff

vs.

DURONEL LOUTE,

        Defendant.

_____/

**GOVERNMENT'S MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL THE USE OF VIDEOCONFERENCING TO PRESENT TRIAL TESTIMONY**

The United States of America, by and through undersigned Assistant United States Attorney, hereby requests that this Court reconsider its Order denying the use of video conferencing to present the testimony of J.Q (hereinafter "Order"). "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3)the need to correct clear error or manifest injustice." *Reiseck v. Universal Communication of Miami, Inc.,* 141 F.Supp. 3d. 1295, 1301 (S.D. Fla. 2015)(Altonaga, J.) The Government submits that it would be manifest injustice to compel J.Q. to testify in Court on January 27, 2022.

**BACKGROUND**

1. On February 9, 2021, a federal grand jury indicted the Defendant with nine counts of aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2) and three counts of failure to pay individual tax returns, in violation of 26 U.S.C. § 7203 (DE 10).

2. The Defendant's trial commenced on January 24, 2022. Evidence is being presented to prove four counts of aiding and assisting in the filing of false tax returns in violation of Title 26,

United States Code, Section 7206 and three counts of individual failure to pay taxes, in violation of Title 26, United States Code, Section 7203.[1]

3. On October 22, 2021, witness J.Q. was served with a subpoena for testimony at trial.

4. On January 5, 2022, witness J.Q. received a positive COVID-19 result from a PCR test provided by the Florida State Department and was instructed to isolate right away. The results were provided to the undersigned on January 10, 2022.[2]

5. On January 12, 2022, witness J.Q. took another facility issued COVID-19 test and received a second positive result on January 13, 2022.

6. On January 25, 2022, witness J.Q. took an at home COVID-19 test and received a third positive result. Witness J.Q. confirms being unvaccinated.

7. After being advised by the Government that the witness was still testing positive, the Court inquired if the Government would be filing a motion permit the use of remote videoconference technology to provide live witness testimony of J.Q. pursuant to Fed. Crim. P. 15. The Court then asked the parties to confer on this issue to determine if both parties would agree to the use of remote videoconference technology to the J.Q.'s testimony. Before the lunch recess, the defense advised the Court that the defense opposed the use of videoconferencing. The Court then ordered the Government to file a motion requesting the use of videoconferencing to present J.Q's testimony.

8. Before the evening recess, the Court asked the Government for an update on J.Q.'s symptoms, The Government articulated a general description that J.Q. was having stomach related issues. Specifically, J.Q. expressed that she was exhibiting COVID-19 related symptoms including but not limited to, vomiting and diarrhea. J.Q. also expressed the lack of funds and

---

[1] Count One-Three, Eight and Nine were dismissed prior to trial.

transportation that would be required to get another PCR test. Witness confirmed videoconference capabilities.

9. The defense again objected to the use of videoconferencing to present J.Q's testimony stating that the defense thought the witness was lying about testing positive to avoid appearing in Court. During the morning session, the defense had argued that the test was probably improperly administered resulting in false positive COVID-19 results.

10. The Court then denied the use of videoconferencing and ordered the Government to have the witness available to testify on the morning of January 27, 2022.

## **ANALYSIS**

The Sixth Amendment expressly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This clause, known as the Confrontation Clause, "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). "This right to a physical face-to-face meeting, however, is not absolute and may be compromised under limited circumstances where considerations of public policy and necessities of the case so dictate." *United States v. Yates*, 438 F.3d 1307, 1312 (11th Cir. 2006) (internal marks and citation omitted).

In *Maryland v. Craig*, 497 U.S. 836 (1990), the Supreme Court approved a Maryland statute that permitted victims in child sex abuse cases to testify in a separate room where they could not see the defendant, but the defendant could see them on a one-way video monitor. *Id*. at 851. The Court noted that "the Confrontation Clause reflects a preference for face-to-face confrontation," but that this preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id*. at 849. The Court held that a defendant's confrontation rights may be satisfied absent a physical, face-to-face confrontation at trial where denial of such

confrontation is necessary to further an important public policy and where the reliability of the testimony is otherwise assured. *Id*. at 850; *see also United States v. Benson*, 79 F. App'x 813, 821 (6th Cir. 2003) (noting *Craig* factors and affirming use of video testimony of elderly witness who was too ill to travel).

Where a defendant's right to confront a witness against him will be affected, the determination of whether a particular case requires a departure from usual procedures must be made, by the trial court, on a case-by-case basis. *Craig*, 497 U.S. at 854. "The court generally must: (1) hold an evidentiary hearing and (2) find: (a) that the denial of physical, face-to-face confrontation at trial is necessary to further an important public policy and (b) that the reliability of the testimony is otherwise assured. The first part of this test requires that the trial court find that it is essential to deny the defendant his right to face-to-face physical confrontation in order to serve the interest the government asserts." *Yates*, 438 F.3d at 1315 (internal citation omitted).

**A.**     ***The denial of physical, face-to-face confrontation at trial is necessary to further an important public policy***.

Although there is no controlling Eleventh Circuit law concerning the use of remote videoconferencing technology to provide live witness testimony in a criminal case during an ongoing pandemic, the United States respectfully submits the denial of physical, face-to-face confrontation at trial is necessary under the present circumstances to further an important public policy, that is, the safety of everyone present in the courtroom.

First and foremost, J.Q.'s testimony is critical to the United States' case-in-chief. J.Q. was taxpayer client of the Defendant and her testimony is highly relevant to at least one of the central issues in this case. Specifically, J.Q will testify about that the Defendant fraudulently prepared her 2014 and 2015 tax returns as charged in Counts Four and Five of the indictment. Testimony may be material even if it is not "definitive proof of guilt or innocence." In a fraud case such as

4

this, testimony from a victim is not a prerequisite to a finding of guilt, but the "context" a victim can provide can be probative of guilt and may assist the government in meeting its burden of proof. *See generally United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2005) (finding that testimony from fraud victims can show series of fraudulent transactions). In this case, J.Q's testimony is critical to proving Counts Four and Five.

Second, there is no question the J.Q. is unavailable to testify at trial as she is currently suffering from the effects of COVID-19. According to the Centers for Disease Control and Prevention (CDC), COVID-19 is a respiratory disease that "spreads when an infected person breathes out droplets and very small particles that contain the virus. These droplets and particles can be breathed in by other people or land on their eyes, noses, or mouth. In some circumstances, they may contaminate surfaces they touch."[3] These particles can then be inhaled into the nose, mouth, airways, and lungs of people who are nearby and can cause a viral infection.[4] Spread of the COVID-19 virus commonly happens when people are in close contact with one another (within about 6 feet).[5] Thus, the CDC recommends that people put 6 feet of distance between themselves and people who do not live in their household.[6] Requiring J.Q. to testify at trial while she is symptomatic and testing positive for COVID-19 presents an unreasonable risk to everyone present in the courtroom, including members of the jury. To be sure, some members of the jury are at heightened risk of serious consequences were they to contract coronavirus. Among adults, the risk

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited January 26, 2022).

[4] *Id*.
[5] *Id*.

[6] *Id*.

for severe illness from COVID-19 increases with age, with older adults at highest risk.[7] The CDC has reported that many of the individuals who have died of COVID-19 in the United States have been adults aged 65 or older.[8]

The United States submits that based on J.Q.'s current medical condition and her particularized risk factors, as well as the potential health risks her exposure poses to others present in the courtroom, allowing her to testify remotely during trial is necessary to further an important public policy, that is, the safety of everyone present in the courtroom. *See United States v. Davis*, 2020 WL 6196741 (D. Del. Oct. 2020) (permitting seven witnesses to testify via videoconferencing during the government's case-in-chief at criminal fraud trial over defendant's objection based on concerns presented by COVID-19); *United States v. Donziger*, 2020 WL 4747532, at *3 (S.D.N.Y. Aug. 17, 2020) ("At least in some instances, allowing remote testimony may be needed to promote the strong public interest in avoiding exposing at-risk individuals to COVID-19 and minimizing further spread of the virus. . . . And depending on the witness's situation, the health risks and travel restrictions occasioned by the ongoing pandemic may also constitute 'exceptional circumstances' that would permit the use of video testimony.") (internal citations omitted).

B.  *The reliability of J.Q.'s testimony is otherwise assured.*

The Defendant has not identified any significant countervailing factors that render the accommodation sought by the United States unjust.

---

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited January 26, 2022).

[8] *Id*.

The procedures the Court will use for testimony via remote videoconferencing technology will adequately and appropriately preserve the essential characteristics of the face-to-face confrontation of a witness that occurs during live testimony in a courtroom. In full view of the jury, J.Q. will be sworn in; will be examined directly by government counsel; and will then be subjected to cross-examination by defense counsel. The jury will be able to evaluate J.Q.'s credibility and veracity through her words as well as her demeanor and comportment. The Court, like the jury, will be able to observe J.Q.'s testimony and will address in real-time any objections or other issues that may arise. On her end, J.Q. will receive a video feed of the courtroom. In short, the jury will be provided the evidence it needs, including through J.Q.'s remote testimony, to assess credibility and reach a just verdict in this case consistent with the evidence.

The Southern District's public notice states that "members of the public" cannot enter the courthouse if they are sick, experiencing symptoms of COVID, or even if they are awaiting the results of a COVID test or were recent contacts of a COVID-positive or COVID-exposed person. See: https://www.flsd.uscourts.gov/sites/flsd/files/NoticeRegardingPublicAccess010722.pdf. Thus, the Government cannot bring the witness without being in contempt of that court directive. And it is comparable to other orders in other courts barring COVID-positive people from entering. For instance, the 11th Circuit also absolutely bars COVID-positive people from entering the courthouses (https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/Final_GO_53.pdf), and so does the Middle District of Florida (https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-covid-order-july-30-2021-3-20-mc-23-j-32.pdf). In addition, if forced to testify, the defense would seek to cross-examine this witness regarding the effects of COVID-19 on her memory thereby bringing to the jury's attention

that the witness who has tested positive for COVID-19 is present in the Courtroom. Finally, the Courtroom and any facilities used by the witness would have to be sanitized.

## CONCLUSION

For these reasons, the Government requests that the Court reconsider its denial of the use of videoconferencing to present J.Q.'s testimony. The Government has conferred with defense counsel regarding this motion to reconsider and Mr. Entin advised that he opposes the government's motion. As an alternative, the government requests that after the testimony of M.M. is completed a brief continuance of the trial be granted to see if the witness can test negative. Mr. Entin has no objection to a brief continuance as long as the trial is scheduled to resume no sooner than next Tuesday February 1, 2022.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   s/*Diana M. Acosta*
DIANA M. ACOSTA
Assistant United States Attorney
Florida Bar No. 075681
101 South US Highway 1, Suite 3100
Fort Pierce, Florida 34950
Telephone: 772-293-0981
Email: Diana.Acosta@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 26, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified.

s/*Diana M. Acosta*
DIANA M. ACOSTA
Assistant United States Attorney

## SERVICE LIST

**Diana M. Acosta, AUSA**
EMAIL: diana.acosta@usdoj.gov
101 S. U.S. Highway 1, Ste. 3100
Ft. Pierce, FL 34950
TEL: 772-293-0981
Attorney for Plaintiff U.S.A.

**Michael James Entin, Esquire**
EMAIL: mjentin@aol.com
101 NE 3rd Ave, Ste 1500
Fort Lauderdale, FL 33301-1127
Attorney for Defendant
Method of Service: CM/ECF